[Civ. No. 42089. First Dist., Div. One. Nov. 28, 1978.]

M. HELEN REYNOLDS, Plaintiff and Respondent, v.
PAUL T. REYNOLDS, Defendant and Appellant.

## COUNSEL

Paul T. Reynolds, in pro. per., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Jamie Jacobs-May, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**\*—This is an appeal, in propria persona, from a child support order issued pursuant to the provisions of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) which directs that appellant Paul Reynolds pay $100 per month child support commencing August 1, 1977.

The order was made at hearing on July 29, 1977. On August 10, 1977, appellant filed notice of appeal "from the decision handed down on July 29, 1977." The order re support was entered August 26, 1977. California Rules of Court, rule 2(c), provides: "A notice of appeal filed prior to entry of the judgment, but after its rendition, shall be valid and shall be deemed to have been filed immediately after entry. A notice of appeal filed prior to rendition of the judgment, but after the judge has announced his intended ruling, may, in the discretion of the reviewing

---

*Before Racanelli, P. J., Elkington, J., and Newsom, J.

court for good cause, be treated as filed immediately after entry of the judgment." In the absence of any showing of prejudice to respondent, "[w]e . . . feel constrained to treat the record as showing 'good cause' within rule 2(c) . . . though no good cause was actually shown by or on behalf of appellants." (*Hohn* v. *Hohn* (1964) 229 Cal.App.2d 336, 340 [40 Cal.Rptr. 125]; *Windsor Mills* v. *Richard B. Smith, Inc.* (1969) 272 Cal.App.2d 336, 339 [77 Cal.Rptr. 300]; *Miller* v. *Johnston* (1969) 270 Cal.App.2d 289, 291, fn. 1 [75 Cal.Rptr. 699].)

■ Appellant requested a jury trial. He contends that under the Seventh Amendment to the United States Constitution, he was entitled to a jury trial and that his request was improperly denied. Respondent contends that "[t]he court exercises equitable powers in determining the amount of child support money to award." The question of a jury trial in a RURESA action in California has apparently never been decided, and whether the action is legal or equitable is in dispute. *Myers* v. *Harrington* (1925) 70 Cal.App. 680, 689-690 [234 P. 412], holds "the real gravamen of the charge is a pure legal question." *Kyne* v. *Kyne* (1940) 38 Cal.App.2d 122, 133 [100 P.2d 806], holds that the issue of paternity is a legal issue; however, fixing the amount of support is an issue "of equitable cognizance." There is no issue of paternity in the instant case. However, *Perez* v. *Singh* (1971) 21 Cal.App.3d 870, 872 [97 Cal.Rptr. 920], citing *Myers* and *Kyne,* states: "An action to establish paternity and to obtain support raises legal, not equitable issues [citations]." Representing Clients in Spousal and Child Support Proceedings (Cont.Ed.Bar 1978) page 240, states: "The right to a jury trial has not been authorized by the [Revised Uniform Reciprocal Enforcement of Support] act because actions for support are equitable in nature." *Pennsylvania* v. *Warren* (1954) 204 Md. 467 [105 A.2d 488, 490] notes that whether proceedings under the act are in law or in equity is left to the individual states, but holds that the obligor had no right to a trial by jury. (See also *Abb* v. *Crossfield* (1974) 23 Md.App. 232 [326 A.2d 234] an action in which husband was held in contempt for failure to make payments pursuant to a support order brought under URESA, holding that the circuit court had equitable power to increase the monthly support payments.)

Civil Code section 4700, subdivision (a), provides that "the court may order either or both parents to pay any amount necessary for the support, maintenance, and education of the child." Consistent with the view of this court in *Kyne, supra,* we hold that the fixing of the amount of support by the court is equitable in nature. The constitutional right to a jury trial is not available in actions in equity. (*Matter of Coburn* (1913) 165 Cal.

202, 219 [131 P. 352]; *Union Oil Co. v. Reconstruction Oil Co.* (1937) 20 Cal.App.2d 170, 189 [66 P.2d 1215]; *Misrach v. Liederman* (1936) 14 Cal.App.2d Supp. 757, 760 [58 P.2d 746].) The court did not err in denying appellant's request for a jury trial.

Appellant contends that since the judge who presided over the June 27th proceedings "was the assistant district attorney involved in the above entitled action, prior to June 27th, 1977," this "constitutes a 'conflict of interest'." Suffice to say, the record belies appellant's contention. The trial judge has sat on the superior court since December 1976. Respondent did not file her petition in Massachusetts until April 25, 1977. The argument is totally without merit.

■ Appellant next contends that he was denied due process of law pursuant to the Fifth Amendment when the trial judge ordered him, under threat of contempt of court, to take the stand and testify against himself. The Fifth Amendment to the United States Constitution states: "No person . . . shall be compelled in *any criminal case* to be a witness against himself . . . ." (Italics added.) The purpose of this *civil* action was to determine whether appellant had any obligation to pay child support, and if so, the amount. (Code Civ. Proc., § 1670 et seq.) *Smith v. Smith* (1954) 125 Cal.App.2d 154 [270 P.2d 613], while holding that this amendment applies only to the federal government and does not constitute a limitation on the power of the state, points out that there was no denial of procedural due process because the obligor had the right to obtain the obligee's testimony by deposition. (125 Cal.App.2d at p. 168.) The Fifth Amendment was inapplicable to the case at bench, and the court properly directed appellant to "come up and be sworn."

Lastly appellant contends that the public servants here involved took an oath to uphold sections 8 and 10 of article I and "they did not take an oath to uphold the worthless-phony dead fed notes, commonly referred to as federal reserve notes . . . ."

Section 8 of article I enumerates the powers granted to Congress. Clause 5 gives to Congress the power to coin money, and clause 6 gives the power to provide for the punishment of counterfeiting the securities and current coin of the United States. Section 10 of article I contains the powers prohibited to the states, and clause 1 provides: "No State shall . . . coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts . . . ." ■ The deposit of lawful money in lieu of gold coin can be used to comply with the court order

requiring appellant to pay $100 per month in child support. (Cf. *Rogers* v. *County Bank of Santa Cruz* (1967) 254 Cal.App.2d 224, 226 [61 Cal.Rptr. 879]; *Stewart* v. *Justice's Court* (1935) 7 Cal.App.2d 61, 63-64 [45 P.2d 424].) Appellant's argument is without merit.

The order re support under the Uniform Reciprocal Enforcement of Support Act entered August 26, 1977, is affirmed.