[Civ. No. 7015. Fifth Dist. Apr. 5, 1983.]

In re the Marriage of PATRICIA C. and FRANK HOWARD WOOD.
PATRICIA C. WOOD, Appellant, v.
FRANK HOWARD WOOD, Respondent.

COUNSEL

Lewis & Lewis and Marilyn A. Lewis for Appellant.

Vizzard, Baker, Sullivan & McFarland, Allan H. McFarland and Peggy S. Fuller for Respondent.

OPINION

**WOOLPERT, J.**—This is an appeal by a mother who has lost physical custody of her two minor children to their father who successfully convinced the trial judge that the mother had engaged in a longstanding effort to interfere with his visitation rights.

Frank (Father) and Patricia (Mother) sought and obtained orders to show cause raising the issues of custody and support. Each wanted custody and child support from the other. Father failed in his attempt to have Mother found in contempt, for reasons not now pertinent. The parties stipulated to a combined hearing on all matters, including restraining orders.

At the hearing, testimony was taken and the minor children of the parties interviewed by the court outside the presence of the parties. The court modified custody of the children by awarding joint legal custody to the parties but shifted

full physical custody to Father. Mother was ordered to pay Father the same child support he had previously paid her ($75 per month). She received the same extensive visitation rights he formerly had.

A week later, Mother filed a request for findings of fact and conclusions of law in response to a notice of intended decision purportedly given at the hearing. This request was denied on the basis that the hearing was held as to an order to show cause and was not an intended decision after a contested dissolution hearing.

Mother filed a notice of appeal purporting to appeal from a purported formal order which was never signed and filed. Four months later the trial judge signed a written order almost identical to the order fully quoted in the notice of appeal. It reflected the court's oral rulings at the hearing. The clerk's minutes also record similar orders. No appeal was taken from the judge's written order. Mother's counsel was not aware that the original proposed formal order had not been signed and filed after the hearing.

### FATHER'S VERSION

Father was, at the time of combined hearings, a 30-year-old painting contractor who lived in Bakersfield with his then present wife (a data support operator) and her son by a previous marriage. A school where the minor children of the parties would attend classes was nearby. When the children were with their father they got along well with his new family.

Mother moved to Oakland, California, with the children. Thereafter, Father attempted to exercise his visitation rights on alternate weekends, but by the time of the hearing had missed 16 weekends and 6 holidays, allegedly due to actions of Mother. When she moved, Mother refused to give Father her address, telephone number or the name of the school attended by the children. On three occasions, Father notified Mother that he was making the 700-mile round trip from Bakersfield to Oakland to exercise his visitation rights, but when he arrived at her house (the location of which he had learned from the children), no one was home. On some occasions when he telephoned the children, Mother refused to let them speak to him. When he wrote to the children, she would not let them reply unless he enclosed a self-addressed, stamped envelope. He asked her to share in the financial burden of transporting the children between Bakersfield and Oakland, but she refused, and when he once attempted to require her to obey the then existing court order by insisting that she pick up the children at his home in Bakersfield, she told him that he would never see the children again.

On three occasions when Father was scheduled to drive to Oakland to pick up the children for visitation, he was told by Mother that she had arranged to take

them to a baseball game and he would have to delay his visitation. On one occasion he arranged to have a relative pick up the children at her house in Oakland to attend a birthday party in the Bay Area; she refused, stating that he was required to personally exercise his visitation rights. She later agreed to let the relative pick up the children, but when the relative arrived at her home, no one was there. A $5 bill that Father had mailed to the children to buy a present for the party was returned to him, torn in quarters, in one of the self-addressed, stamped envelopes he was forced to provide. Father believed that Mother was attempting to sever his relationship with his children.

Father and his present wife reported earnings for tax purposes of $16,201 in 1978, $23,574 in 1979 and $20,988 in 1980. He felt that $75 per month child support per child was adequate and was unable to pay more at that time.

## MOTHER'S VERSION

Mother had primary care of the two minor children of the marriage since their birth and custody of them during the five years since the parties separated. Having become a licensed registered nurse since her divorce, she moved to Oakland to work at a hospital there and to be near her relatives. She owned a home, which she and the children shared with Raul Martinez, a student from Argentina who attended a local college and who babysat the children at night while she worked. She had not remarried.

Mother testified that she made the children available for Father's visitation on every appropriate weekend, but he frequently did not come to Oakland—he only came once a month. In the past he had become belligerent in dealing with her, used swear words, and harassed her, such as by calling the hospital where she worked. Someone did tear up a $5 bill he had sent to the children and mailed it back to him.

Her gross monthly income excluding child support was at the time of the hearing $1,745.12 and her net monthly income, $1,327.60. She could not afford to transport the children from Bakersfield to Oakland, and $75 per month child support per child was inadequate; she requested $150 per child.

## CHILDREN'S "TESTIMONY"

Bryan, a first-grader, and David, a fourth-grader, initially expressed a preference to continue living with their mother and visiting their father. There had been times when their father was supposed to pick them up but their mother wouldn't let them go with him. Bryan thought they had moved from Bakersfield so that their father wouldn't make any problems. In response to questions by

the court the children indicated that they would be willing to live with their father and have visits with their mother.

In the course of argument, Mother's counsel, after learning that the trial court proposed to place the children in the custody of Father, suggested to the court that joint physical custody be ordered. The trial court found both parents fit and ordered joint legal custody but expressed a desire that the maximum relationship be maintained by the children with both parents.

The court found that for the welfare of the children and to have the maximum beneficial relationship with each parent, greater exposure to the father was desirable, and therefore granted the physical custody of the children to Father, with the visitation rights formerly ordered for him granted to Mother. She was ordered to pick up the children for visitation and Father to pick them up when visitation had concluded. Mother was ordered to pay $75 per child per month child support to Father.

Is THE MINUTE ORDER DATED DECEMBER 22, 1981, AN APPEALABLE ORDER?

Mother purported to appeal from an order of the Superior Court of Kern County ". . . entered . . . on December 22, 1981 . . ." and set forth the purported order in her notice of appeal. No formal order exists as of that date.

■ Where a minute order does not direct or otherwise require a further or formal order, appeal lies from the minute order despite the fact that a formal order or formal judgment is subsequently entered. (*Wright* v. *Groom Trucking Co.* (1962) 206 Cal.App.2d 485, 488 [24 Cal.Rptr. 80].) It is a matter of trial court procedure whether the court makes its final decision by minute order without a direction that a written order be prepared, or elects to enter a direction that a formal order be prepared. (*Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 304 [259 P.2d 901].) Where findings of fact or a further or formal order are required, an appeal does not lie from a minute order. (*Ibid.*)

It is evident the trial court contemplated a formal written order would be prepared, since he asked the attorneys which one would prepare it. In addition, it appears that findings were required as to the child support issue. For these reasons, appeal does not lie from the minute order dated December 22, 1981.

### PREMATURE NOTICE RULE APPLIES

We have concluded the notice of appeal was filed under the mistaken belief that a formal order had been signed and filed. Apparently Father's counsel prepared such an order and forwarded a copy to Mother's trial counsel. From this document the notice of appeal followed. However, for unexplained reasons

the original order was never signed. Instead, a substantially similar order was signed and filed some months later. Mother's appellate counsel was unaware that her pending appeal was premature.

Since a formal written order was eventually prepared and signed by the trial court, and that order has been included in the record on appeal by augmentation of this court, we will treat the appeal as having been made from the later formal written order.[1] Prejudice would occur only if we failed to apply Rules of Court, rule 2(c).[2] (*Reynolds* v. *Reynolds* (1978) 86 Cal.App.3d 732, 733 [150 Cal.Rptr. 423].)

## DID THE TRIAL COURT ERR IN REFUSING MOTHER'S REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW?

Mother contends the trial court was required to grant her request for findings of fact and conclusions of law because: (1) the hearing on the combined orders to show cause was the trial of an issue of fact so as to bring the hearing within the provisions of Code of Civil Procedure section 632; (2) Civil Code section 4700, subdivision (a), requires findings where child support is at issue; and (3) a need for findings in proceedings where custody is changed can be implied from Civil Code section 4600.5, subdivision (d), and case law.

Father argues (1) Code of Civil Procedure section 632 is inapplicable because the trial court's dispositive orders were the result of motions, not trials, (2) support was not at issue, since the effect of the trial court's change of custody was to continue support unchanged, albeit with a different parent paying, and (3) Civil Code section 4600.5, subdivision (d), only requires findings where custody is changed from joint to sole custody.

## CODE OF CIVIL PROCEDURE SECTION 632

At the time the trial court made its order modifying custody, Code of Civil Procedure section 632 provided for findings of fact and conclusions of law ". . . upon a trial of fact . . ." if a party appearing at the trial so requested. It was a "universal" rule that such findings were not required, even if requested, after an order made on a motion; this rule was applied to an order granting a motion for change of custody in a divorce proceeding in *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 76-77, footnote 2 [98 Cal.Rptr. 501].

---

[1]At argument, neither party was aware that the originally prepared formal order had not been signed by the trial court, and neither objected to this court's consideration of the premature appeal.

[2]Rule 2(c) states: "A notice of appeal filed prior to entry of the judgment, but after its rendition, shall be valid and shall be deemed to have been filed immediately after entry. A notice of appeal filed prior to rendition of the judgment, but after the judge has announced his intended ruling, may, in the discretion of the reviewing court for good cause, be treated as filed immediately after entry of the judgment."

This traditional rule was challenged in *In re Rose G.* (1976) 57 Cal.App.3d 406 [129 Cal.Rptr. 338], an appeal by the natural parents of two minor children from an order of the trial court declaring the children free from parental control and custody pursuant to Civil Code section 232. The court held, inter alia, that the distinction between "special proceedings" and "general proceedings" in the application of Code of Civil Procedure section 632 (findings not being required in the former) was no longer an adequate basis for determining whether findings would be necessary upon request, and should be replaced with a test which considered the importance of the issues of fact being decided at the particular hearing: where the issues are sufficiently important, formal findings of fact and conclusions of law would be required upon the request of a party regardless of the nature of the proceedings. (*Rose G.,* at pp. 416-418.) Since the custody of minors is of such tremendous importance to all the parties involved, the court held that findings would be required in all proceedings where custody and control of minor children were sought to be removed from the natural parents.[3] (*Ibid.*) The new rule relative to findings was predicated upon due process constitutional grounds and upon the authoring court's analysis of California Supreme Court decisions which emphasized that basic fairness, as well as adequate appellate review, required findings at the trial level. (*Id.,* at p. 416.)

In a case involving the petition of a natural parent to withdraw her consent to the adoption of her minor child, a different court held that the *Rose G.* test did not require findings of fact after a decision to permit the *withdrawal* of consent because the significance of the issues and concomitant due process protections associated with such proceedings (pursuant to Civ. Code, § 226a) were lesser than those arising from a Civil Code section 232 hearing, since the former upholds the rights of a natural parent while the latter severs them. (*Guardianship of Baby Boy M.* (1977) 66 Cal.App.3d 254, 265-267 [135 Cal.Rptr. 866].) The court also held that the transcribed record of the trial court proceedings provided an adequate basis for appellate review and guarded against a careless decision by the trial court by permitting review of the evidence and legal analysis upon which the lower court based its decision. (*Id.,* at pp. 267-268.) Recognizing that it would be the better practice to make express findings, the court refused to reverse the trial court solely because the lower court failed to recite that the statutory criteria for its decision had been found. (*Id.,* at p. 268.)

The new test relative to the necessity for findings of fact announced in *In re Rose G.* and refined by *Guardianship of Baby Boy M.* involves a balancing of the following factors: (1) the importance of the issues at stake in the pro-

---

[3]This new test was applied only prospectively, and the decision of the trial court affirmed, because the traditional rule had been restated by *In re Helen J.* (1973) 31 Cal.App.3d 238, 244 [107 Cal.Rptr. 106], shortly before the decision of the trial court. (*Rose G., supra,* 57 Cal.App.3d at p. 418.)

ceeding, including the significance of the rights affected and the magnitude of the potential adverse effect on those rights; and (2) whether appellate review can be effectively accomplished even in the absence of express findings. Factor (2) is most likely to overcome the need for express findings when the decision of the trial court is governed by standards made explicit by a rule or statute. In that situation the appellate court can examine the transcribed record of the proceedings below knowing the criteria the lower court must have applied. If the issues at stake are sufficiently important, *and* no record exists or it is not readily apparent from the record what standards the trial court applied, the lack of findings upon request of a party necessitates reversal.

In the present case, involving custody of minor children as between two natural parents, the importance of the issue and the magnitude of potential adverse effects are great. However, such custody orders remain subject to modification. The standards governing the award of the custody of minor children, while permitting the trial court wide discretion, are explicitly set forth in Civil Code section 4600. There being a transcribed record of the hearings, meaningful appellate review in the present case is possible in the absence of express findings.[4] It would serve no useful purpose to reverse the trial court simply because it did not reiterate in writing its oral findings.

### Civil Code Section 4600.5, Subdivision (d)

■ Civil Code section 4600.5 deals with the ordering of joint custody. It provides that when a court *declines* to order joint custody after a request by either party or pursuant to stipulation, or if the court *modifies* or *terminates* an order for joint custody over the opposition of a party, the court shall state in its decision the *"reasons"* for such denial, modification or termination. In the present case, the trial court was not *declining* a request, or *modifying* or *terminating* an existing order for joint custody. Civil Code section 4600.5, subdivision (d), does not by its terms apply.

Mother asserts, without any citation of authority, that the enactment of Civil Code section 4600.5, subdivision (d), evidences a clear legislative intent to require "findings" whenever custody is modified. To the contrary, the Legislative Counsel's Digest of the act that added section 4600.5 to the Civil Code does not support this assertion, suggesting rather that the Legislature was concerned only with creating and preserving joint custody and not with the procedural aspects of custody orders in general.[5]

---

[4]The trial court did expressly find orally that it would be in the best interests of the minor children that they be placed in the custody of Father, on the statutory grounds that he would be more likely to permit visitation by the mother than she to permit visitation by him.

[5]Having created a joint (legal) custody arrangement, future modifications, if opposed, will require that the trial court state reasons.

## CIVIL CODE SECTION 4700, SUBDIVISION (a)

Civil Code section 4700, subdivision (a) provides, in relevant part: "In any proceeding where there is at issue the support of a minor child, the court may order either or both parents to pay any amount necessary for the support, maintenance, and education of the child. At the request of either party, the court shall make appropriate findings with respect to the circumstances on which the order for the support of a minor child is based. . . ."

Father argues that since it was clear the trial court was reversing the positions of the parties—Father to have custody and Mother to then pay the same support that he had formerly paid—support was not really "at issue," and the language of Civil Code section 4700, subdivision (a), requiring findings upon request is not applicable.

■ It is illogical to conclude from the fact that the *amount* of support was not changed by the trial court that support of the minor children of the parties was not "at issue." Both parties behaved as though support was at issue. Father sought "reasonable" support to be paid by Mother, and Mother sought an increase in the previously ordered support paid by Father from $75 per child to $150 per child. A "reversing" of the previously ordered child support may mean that the trial court considered all the factors of Civil Code section 246 and determined that the children would need the same amount from their mother as had been previously paid by their father, or it might mean that the trial court failed to consider section 246 and merely continued the same amount of support, with roles reversed. Without express findings it is impossible to review the trial court's action. The record reveals no attempt by the court to state findings. Thus, by the plain terms of Civil Code section 4700, the trial court's failure to make the child support findings requested by Mother was error.

In addition, the case of *In re Marriage of Havens* (1981) 125 Cal.App.3d 1012 [178 Cal.Rptr. 477], held that a trial court's failure to make requested findings as to child support was reversible even before Civil Code section 4700, subdivision (a), was amended to require such findings.[6]

It appearing that the trial court erred in not making the requested findings as to the issue of child support, the case is reversed as to that issue and remanded to the trial court. (*In re Marriage of Leff* (1972) 25 Cal.App.3d 630, 644 [102 Cal.Rptr. 195].) Upon remand this matter will be subject to the revised provisions of Code of Civil Procedure section 632 which substitutes a "statement of decision" method of spelling out the basis for the court's decision on questions of fact and law. In this case we find the request by Mother for "findings" to have been an adequate request to invoke the new procedures of section 632.

---

[6]In *Havens* the Court of Appeal referred to findings in terms of "written findings of fact."

## Did the Trial Court Err in Modifying Custody From Mother's Sole Custody to Joint Custody With Physical Custody to Father?

Mother asserts the trial court's modification of custody was error because (1) it was based solely upon her change of residence from Bakersfield to Alameda County, and (2) joint custody is improper where the parties do not agree to it and have a history of bitter conflict regarding visitation and custody. Father contends (1) the trial court modified custody because he was more likely to permit Mother to exercise visitation rights than she was to cooperate with him, and (2) joint custody may be ordered absent agreement of the parties.

### Change of Residence

While it is true the absence of express findings hampers the appellate court in determining whether the trial court modified custody for a proper or improper purpose, it does not appear, as contended by Mother, that her change of residence was the reason for the modification. The trial court expressed with reasonable clarity that it was placing the children in the custody of the father because it was in their best interest to maintain a good relationship with both parents, and that Mother had been attempting to sever the children's relationship with their father.

■ Frustration of visitation rights by the custodial parent is a proper ground for transfer of custody to the formerly noncustodial parent. (*Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 652 [165 Cal.Rptr. 877, 612 P.2d 967]; *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293-294 [132 Cal.Rptr. 261].) This concept finds support in the language of Civil Code section 4600, subdivision (b)(1), which provides that in awarding custody as between parents, the trial court should consider ". . . which parent is more likely to allow the. child or children frequent and continuing contact with the noncustodial parent. . . ." The Supreme Court has described this concept as a "significant factor." (*Moffat, supra,* 27 Cal.3d at p. 652.) ■ An appellate court generally reverses a domestic relations order only for abuse of discretion (*Ciganovich, supra,* 61 Cal.App.3d at p. 294). Since no such abuse appears in this case, the trial court's modification of custody was proper.

### Joint Custody

Civil Code section 4600, subdivision (a), provides, inter alia, that in a proceeding where custody is at issue, the trial court may make any order as may seem necessary or proper. Subdivision (b) of that same statute establishes a preferential order for awarding custody according to the best interests of the minor children, and the first preference is set forth as: "(1) To both parents jointly pursuant to Section 4600.5 or to either parent. . . ."

Civil Code section 4600.5, subdivision (a), provides, inter alia, that the agreement of the parents to an award of joint custody creates a presumption affecting the burden of proof that joint custody is in the best interests of a minor child of a marriage. Section 4600.5, subdivision (b), provides that where the parents do not agree, joint custody may still be awarded, but no presumption is created. Subdivision (c) of that statute permits joint "legal" custody *without* the awarding of joint physical custody.

 Mother cites *In re Marriage of Neal* (1979) 92 Cal.App.3d 834 [155 Cal.Rptr. 157]—a case decided before the enactment of Civil Code section 4600.5 and before the amendment of section 4600, subdivision (b)(1), to establish joint custody as one of the first preferences for an award of custody—as authority for her contention that an award of joint custody absent agreement of the parties is an abuse of discretion by the trial court. (*Id.*, at p. 844.) The case appears to make such a holding, under circumstances similar to the present appeal—constant acrimony over visitation between the parties resulting in frequent resort to the courts.

 In adopting or amending statutes, the Legislature is presumed to have acted with knowledge of existing domestic judicial decisions and to have enacted or amended statutes in light of such decisions as have a direct bearing on the legislative action. (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 831-832 [174 Cal.Rptr. 348].) The amendment of Civil Code section 4600, subdivision (b)(1), to include joint custody in the first preference category for custody awards, and the enactment of Civil Code section 4600.5, subdivision (b), permitting joint custody absent agreement of the parents—both legislative acts occurring after *Neal* was decided—indicates that the Legislature intended thereby to abrogate the holding of *Neal* that a joint custody award absent parental agreement was, per se, an abuse of discretion.[7]

We recognize that the concept of legal custody as something different from physical custody may well present difficulties to the conscientious attorney who seeks to advise a client whose main objective is physical custody. Advising a distraught parent about gaining physical custody but not sole legal custody may present more difficulties to an attorney than to the doctor who seeks his patient's informed consent to surgery but does not want to add an emotional problem to a surgical one. The problems arising from such custody orders have been well expressed in *Neal.* However, under the current statutory law, the trial

---

[7]The fact that *Neal* was referred to in footnote 2, page 176, of *Simek* v. *Superior Court* (1981) 117 Cal.App.3d 169 [172 Cal.Rptr. 564], does not indicate the continued validity of the interpretation of *Neal* advanced by Mother. *Simek* involved joint custody only in regard to an evidentiary question, and cited *Neal* for its discussion of the scope of joint custody, not for any holding as to the propriety of awarding same.

court's awarding of joint custody in this case cannot be said to have been an abuse of discretion as a matter of law. We will not attempt, as requested by Mother's counsel, to anticipate changes in the current statutory law.

■ In addition, a party who invites error is estopped from asserting it as grounds for reversal on appeal. (*Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 606-607 [94 Cal.Rptr. 200]; *Dilley* v. *State Farm Mutual Automobile Ins. Co.* (1967) 249 Cal.App.2d 385, 387 [57 Cal.Rptr. 195].) Mother's counsel invited the trial court to err, if the joint custody order was error, by the suggestion to the trial court that it consider joint custody instead of placing sole custody of the minor children in Father. Faced with the trial court's expressed intention to modify custody so that Father would have sole custody of the minor children, Mother's counsel seized upon the notion of joint custody in an attempt to preserve as much control over the children as possible. Mother cannot now complain that this was error.

### DID THE TRIAL COURT ERR BY ORDERING THE CHANGE IN CUSTODY PRIOR TO RECEIPT OF ALL EVIDENCE PERTAINING TO THAT ISSUE?

Mother contends that because the trial court expressed an intention to change custody while questioning the minor children of the parties, it failed to consider all the evidence before ordering a change of custody, contrary to the holding of *Nadler* v. *Superior Court* (1967) 255 Cal.App.2d 523 [63 Cal.Rptr. 352]. Later cases have held a refusal to consider all the evidence bearing on custody to be an abuse of discretion calling for reversal. (*In re Marriage of Kern* (1978) 87 Cal.App.3d 402, 411 [150 Cal.Rptr. 860]; *Schlumpf* v. *Superior Court* (1978) 79 Cal.App.3d 892, 901 [145 Cal.Rptr. 190].)

■ In the present case the trial court did not refuse to exercise its discretion, and did not refuse to hear any evidence. The parties had concluded their presentation of evidence when the trial court stated that it wished to speak to the minor children, and it had nearly concluded its questioning of them when it made the statement assigned as error by Mother. It is evident the mistakes committed by the trial courts in *Nadler* and *Kern* were not repeated by the present trial court.

The trial court specifically advised counsel for the parties that it intended to modify custody, *subject to their argument.* Such an expression of intended decision is consonant with more formal procedures for announcing judgments (Code Civ. Proc., § 632), and permits the attorneys to focus and shorten their arguments to the court. No error occurred in this respect.

## DID THE TRIAL COURT ERR BY NOT INDICATING ON THE RECORD THE RESULTS OF MEDIATION?

Mother asserts the trial court's failure to indicate on the record the results of the referral of the parties to mediation is reversible error, citing *In re Marriage of Russo, supra,* 21 Cal.App.3d 72.

The error identified in *Russo* was the consideration by the trial court of inadmissible evidence and testimony not subject to cross-examination via a conference by the court with the domestic relations commissioner. (*Id.,* at pp. 90-91.) It was not the failure to indicate the result of an extrajudicial investigation, but rather the court's consideration of the result of that investigation outside the proper evidentiary procedures of the court, that was reversible. No such error appears in the present case.

Nothing in Civil Code section 4607 requires the court to indicate a failure of mediation. However, if the mediator exercises the option given by subdivision (e) of that statute to render a recommendation or report to the court, we presume the parties will be notified. We assume no report was made to the court in this case.

The judgment is reversed as to the issue of child support only and remanded on that issue with directions to make appropriate findings by the statement of decision method, and except as to the issue of child support, affirmed.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.