Filed 7/1/16  A.R. v. L.N. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| A.R.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>L.N.,<br><br>    Defendant and Appellant. | B267860<br><br>(Los Angeles County<br>Super. Ct. No. SF001525) |

APPEAL from an order of the Superior Court of Los Angeles County.  Christine Byrd, Judge.  Affirmed.

Ribet & Silver and Claudia Ribet for Defendant and Appellant.

Gorman Law Office and Seth F. Gorman for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \*

In this parentage action, mother L.N. appeals an order granting father A.R. sole physical and legal custody of their minor child, G.R.N., and allowing father to move the child from Vancouver, Washington back to Los Angeles. For the reasons set forth below, we find that the record is inadequate to resolve mother's claims, and in any event, the portions of the record before us fail to demonstrate the trial court abused its discretion.

## BACKGROUND

Mother filed a petition for writ of supersedeas seeking an order staying the trial court's order which is the subject of this appeal. We denied her petition for writ of supersedeas by order dated December 1, 2015. The record before us consists only of the exhibits to mother's petition for writ of supersedeas, which mother has requested this court use "as her Appendix in Lieu of Clerk's Transcript." We grant mother's request to deem the exhibits her appellate appendix. Although mother has waived her right to appellate review by her failure to provide an adequate record, we nonetheless have studied the portions of the record provided to us, in view of the importance to the parties and to their child of the issues raised on appeal.

### 1. The Paternity Action and Custody Orders

Mother and father have never been married. In June 2011, G.R.N. was born prematurely, and was hospitalized in UCLA's neonatal intensive care unit (NICU). On July 1, 2011, while G.R.N. was still in the NICU, mother sought a domestic violence restraining order against father, claiming that he was harassing hospital staff, and had threatened her and the baby. On July 18, 2011, father commenced this paternity action to establish a parental relationship with G.R.N. On July 20, 2011, mother's request for a restraining order was denied, after the trial court found she had failed to meet her burden of proof. The parties entered into a stipulation establishing father's paternity on September 30, 2011. Shortly thereafter, it appears the trial court ordered father be given unmonitored visits with G.R.N. The temporary custody order is not part of the record on appeal. Instead, mother has included an unsigned proposed order, stamped received by the court in November 2011.

The record includes a September 26, 2013 statement of decision by Judge Christine Byrd. The statement of decision indicates that in June 2013, mother filed an ex parte application for modification of visitation and for a temporary restraining order (TRO), alleging that G.R.N.'s therapist suspected father had sexually abused G.R.N. The ex parte application, and any response to it, are not part of the record on appeal. The court's statement of decision reflects that the trial court initially ordered father's visits to be monitored, but after a three-day evidentiary hearing, the trial court found there was no evidence of sexual abuse. The transcript of this hearing is also not part of the record on appeal.

According to the statement of decision, the court found mother's testimony, and that of mother's child care providers, to be "biased and to lack credibility." The court noted that the only credible testimony regarding the child's sexualized behavior (the allegation of abuse was based on the child's behavior) was that of Dr. DeLeaver, but this testimony "was insufficient to establish [mother's] allegations." The court did not rule out the possibility of abuse, but found there was not enough evidence to support the allegation. In the statement of decision, the court made a temporary custody order, giving mother and father joint legal and physical custody of G.R.N. The court also ordered a custody evaluation, which would include a mental health assessment of both parents, to determine what custody arrangement would be appropriate for G.R.N.

The trial on custody took place on April 24, 25, May 1, 2, 15, and 16, 2014, before Judge Shelley Kaufman. Mother requested that we augment the record on appeal to include the transcripts of these proceeding. We grant the request. The custody evaluator, Dr. Albert Gibbs, testified at the trial, and provided a comprehensive custody evaluation, including an assessment of mother's request to move to Vancouver, Washington with G.R.N. (Mother had apparently, before the custody trial, expressed a desire to relocate with G.R.N.) Dr. Gibbs's custody evaluation is not included in the record on appeal. Dr. Gibbs testified that between 2011 and July 2013, G.R.N. lived with mother, but that father had visitation. However, father had never had any overnight visits with G.R.N. Father had requested overnight visits, but mother had resisted increasing his visitation.

3

G.R.N. appeared to be "more emotionally secure" and "happier" with mother. G.R.N.'s relationship with father was "warm" and "comfortable," but she was "significantly more muted emotionally. She wasn't as animated . . . spontaneous [or] verbally engaging" when she was with father.

Psychological testing of father indicated that he could be very warm, but could also be distant, irritable, pragmatic, and skeptical. Father's test results also suggested that father was prone to "episodic angry outbursts." Dr. Gibbs was concerned that father's anger with mother about being accused of sexually abusing G.R.N. would "[a]ffect . . . his ability to co-parent with mother."

However, mother also suffered from "vulnerabilities" that affected her ability to co-parent. Dr. Gibbs was concerned that mother's plan to relocate to Washington was intended to deprive father of custody of G.R.N.

Mother's psychological testing indicated that she suffered from "defensiveness." She was also vulnerable to "distorted perceptions." Mother "seemed to see sexual abuse almost everywhere." Mother remained convinced that father had sexually abused G.R.N.

In July 2014, the trial court issued a 29-page statement of decision giving the parties joint legal and physical custody of G.R.N., and establishing a visitation schedule. Judgment on the statement of decision was entered on August 15, 2014.

The judgment authorized mother to move with G.R.N. to Vancouver, Washington. The judgment provided that mother "shall have parenting time with [G.R.N.] at all times, except as the times stated below for parenting time with Father." The statement of decision summarized the testimony of Dr. Gibbs.

The court established two different parenting plans, depending on whether father "established a household in Vancouver." "If father remains living in Los Angeles, meaning he has not established a household in Vancouver," father was to have one weekend per month with G.R.N. in Los Angeles and an additional optional weekend in Washington. If father established a household in Washington, he was to have G.R.N. more often. After a more limited three-month schedule, where father would have G.R.N. for a portion of the day on Mondays and Wednesdays, and for alternating weekends,

4

father was to have G.R.N. pursuant to a "2-2-5" plan, where he would have G.R.N. from Monday morning to Wednesday morning, and on alternate weekends. Father was not required to establish his sole or primary residence in Washington state. He was required only to establish "a household" in that state to enjoy expanded visitation with G.R.N.

## 2. Proceedings in Washington State Court

On July 29, 2015, mother filed a petition in Washington court to modify the Los Angeles custody decree, alleging that "[G.R.N.] has disclosed sexual abuse to [her] therapist" and that "[t]here is a pending investigation as reported to Child Protective Services [(CPS)]. Mother signed a Safety Plan with CPS on July 24, 2015, which directs the child shall remain with the mother for an indefinite period of time." The petition alleged that Washington had jurisdiction because G.R.N. lived in Washington. Mother's proposed parenting plan, which was filed with the petition, provided that father should have no visitation with G.R.N.

Mother simultaneously sought a restraining order against father in Washington based on allegations of sexual abuse. According to the motion, G.R.N.'s "therapist advised [mother] on the evening of July 23, 2015, that [G.R.N.] had disclosed sexual abuse by her father and that she would be calling Child Protective Services and Children's Justice Center to report." The Washington court issued a TRO that same day.

On August 12, 2015, father moved to dismiss the Washington action, claiming California, where he was a resident, had jurisdiction. In her opposition to the motion to dismiss, mother argued that father "is a resident of the State of Washington," and introduced evidence that father had leased an apartment in Washington in November 2014, and that father exercised his visitation rights with G.R.N. under the Washington 2-2-5 plan. On August 27, 2015, the Washington court dismissed mother's petition, finding that California had continuing jurisdiction over the matter. The request for a restraining order was also denied.

## 3. Further Proceedings in California

The following day, father moved the California trial court to modify the parenting plan. He sought sole legal and physical custody, including the right to take G.R.N. back

to California. Father complained that mother had falsely accused him of sexual abuse and had violated the parenting plan by refusing to let him visit G.R.N. following commencement of the CPS investigation. As of his August 24, 2015 declaration in support of his request for modification, father had last seen G.R.N. on July 22, 2015, even though CPS had closed its investigation, and determined the allegations against father to be "unfounded" on August 7, 2015. Father urged that an order granting him sole custody was in G.R.N.'s best interest because mother was trying to exclude him from G.R.N.'s life. Father's declaration in support of the requested modification referred to numerous attached exhibits, which do not appear in the record on appeal.

Mother opposed father's request, arguing that the California court lacked jurisdiction because all of the parties resided in Washington. Mother also argued that Washington state was a more convenient forum. Finally, on the merits, mother argued that if the California court retained jurisdiction, it should not change the parenting plan because father had not established changed circumstances. Mother attached hundreds of pages of exhibits in support of her opposition, most all of which dealt with the parties' ties to Washington.

Mother's declaration in support of her opposition also stated that on May 28, 2015, G.R.N.'s pediatrician, Dr. Stark, had informed mother that G.R.N. had tested positive for marijuana. The record does not disclose why a four-year-old child was tested for drugs. The following day, according to mother, Dr. Stark made a report to CPS. Mother was contacted by CPS, and signed an agreement to open an investigation. Later, on July 23, 2015, G.R.N.'s therapist contacted CPS. The following day, CPS contacted mother and mother signed a safety plan which provided that "child will remain with mother." The plan indicated that sexual abuse was suspected, but did not specify that father was the suspected abuser, and did not purport to limit father's contact with G.R.N.

Father's reply declaration asserted that mother had denied father all access to G.R.N. between July 24, 2015, and September 4, 2015. Visitation had resumed on September 11, 2015, but mother would not adhere to the Washington "2-2-5" visitation

6

schedule, and would only allow father visits under the more limited "Los Angeles" schedule (which applied if father did not establish a household in Washington).

The hearing on father's request for modification was held on October 7, 2015. Father was present in court and mother participated by CourtCall. At the beginning of the hearing, the court indicated that father "asked to take testimony from the parties." Mother's counsel did not object, or discuss whether mother would testify, at that time. When the court asked father if he would like to testify, his counsel asked, "Are we taking testimony now?" The court responded, "Counsel, today's the day for the hearing. I'm ready to proceed with the hearing and rule." Mother's counsel stated that father had requested a "move-away" order, requiring 45-days notice. Counsel also argued "I believe we need the opportunity to bring in an evaluator. We already have an expert on board ready to jump in, should it be necessary. And so I think we need to have a continuance in order to be able to properly have . . . a determination of what's in the best interest of this child. It's not in her best interest to be dragged from state to state, back and forth. [¶] . . . [¶] . . . [I]t's up to you, Your Honor, whether you want to take [father's] testimony now or if you want to grant us a continuance so we can bring in an expert to see what is in the best interest of the child." The court indicated it would proceed with the hearing.

Father testified that he established a second residence in Washington to maintain contact with G.R.N. He lived with his father in Agoura Hills when he was in the Los Angeles area. Mother had only allowed father to visit with G.R.N. for two weekends in September 2015, and the first weekend in October, 2015. When father asked to resume the 2-2-5 Washington plan, mother responded that father lived in Los Angeles and that the parties should follow the Los Angeles plan. Father is concerned that mother was coaching G.R.N. to say "things." Father was very concerned that the allegations of sexual abuse "could be permanently damaging psychologically to [G.R.N.]."

After father concluded his testimony, mother's counsel indicated that he would like to ask mother a question, but the court informed counsel that testimony could not be taken over CourtCall. Counsel again asked for a continuance to obtain expert testimony to address G.R.N.'s best interests. Counsel indicated that mother had already retained an

7

expert, who had reviewed Dr. Gibbs's report. Counsel also indicated that mother should be permitted to travel to Los Angeles to testify.

Father's counsel clarified that mother had been in town just days before the October 7, 2015 hearing, and had returned to Washington and elected not to attend the hearing. Counsel also argued that Dr. Gibbs had already conducted an evaluation, and that another evaluation was unnecessary.

According to mother's counsel, mother had returned to Washington because she had a swollen knee.

The court found "it's not necessary to have expert opinions based on the significant conduct in this case." The court found mother failed to comply with the 2014 custody order, and "has attempted to eliminate [father] from [G.R.N.'s] life by repeating in Washington the very same tactics she had employed earlier in Los Angeles, obtaining a temporary restraining order without notice to [father], [and] participating in a child abuse investigation based on unsubstantiated claims of sex abuse." Mother had also attempted to divest the court of jurisdiction, deprived father of contact with G.R.N. for at least 42 days, and had subjected G.R.N "to the physical invasions that are involved in a sex abuse investigation." Moreover, "after losing the court hearings in Washington, [mother] refused to comply with the 2-2-5 schedule in the judgment applicable to the Vancouver, Washington visitation."

The court found it had continuing and exclusive jurisdiction, and found that it was not in G.R.N.'s best interest that the parties share joint custody. The court concluded that father was likely to ensure continuing contact with mother. The court granted father sole physical and legal custody, and ordered that mother was to have 10 days of visitation per month, in two 5-day blocks. Mother's visitation could occur in California or Washington, but mother was to provide all transportation at her expense.

When counsel asked if father could move to California with G.R.N., the court responded, "I have granted him sole legal and physical custody. . . . [¶] . . . [¶] . . . and all the rights that go along with it."

8

On October 14, 2015, mother moved ex parte for a stay of the court's order so mother could pursue her "appellate remedies." In response, father urged that mother had refused to turn over G.R.N. pursuant to the court's October 7, 2015 order, and would not tell him where G.R.N. was located. Father also requested an order that mother immediately turn over G.R.N. to him. On October 14, 2015, the court denied mother's request for a stay, and ordered mother to turn over G.R.N. that same day.

Mother filed this appeal.

## DISCUSSION

Mother contends the trial court's order allowing father to "move away" with G.R.N. was erroneous, reasoning there was no custody evaluation and no full and fair hearing. Mother also contends her due process rights were violated when the court did not continue the hearing to allow her to testify. Lastly, mother contends father failed to satisfy his burden of proof that a substantial change in circumstances required the modification, and that the modification was in G.R.N.'s best interests. We find that mother has waived any claim of error by failing to provide a complete record on appeal, and that in any event, mother has not demonstrated an abuse of discretion.

## I.    Adequacy of the Record

Mother's appellate record consists of the exhibits filed in support of her supersedeas petition. In her opening appellate brief, mother has requested leave of this court to use these documents as her appellate record, and we have granted that request.

The appendices do not include an index listing the contents in alphabetical order. (Cal. Rules of Court, rule 8.144(b)(1) ["The . . . transcript must contain alphabetical and chronological indexes listing each document and the volume"].) There is no notice of election to proceed by appendix. (Rule 8.124(b)(1)(C).) There is no register of the action, or case summary, listing all the filings and hearings held in the trial court. (Rules 8.124(b)(1)(A), 8.122(b)(1)(F) [record must include the register of actions].) There are numerous documents from the Washington proceedings, and it is unclear whether these documents were part of the trial court's record below. (Father asserts these documents are outside of the superior court record.) (Rule 8.124(b)(3)(A) [an appendix

9

must *not* contain "documents or portions of documents filed in superior court that are unnecessary for proper consideration of the issues"].)

Without a case summary, we cannot determine what mother has properly included, and what mother has omitted, from the record. Moreover, it appears that mother has omitted documents material to this court's consideration for her appeal. (Cal. Rules of Court, rule 8.124(b)(1)(B) [appendix must contain any item that is "necessary for proper consideration of the issues"].) As discussed in the statement of facts, above, it appears that mother's appendix omits the exhibits from father's request for an order, which is at issue in this appeal. It also appears that the record has omitted the previous custody evaluation which was conducted by Dr. Gibbs, and that the record does not include a reporter's transcript, or other filings, concerning the 2013 sexual abuse proceedings (other than the statement of decision), which factored into the court's reasoning in fashioning its order here.

It was mother's burden to provide an adequate record on appeal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; *Altman v. Poole* (1957) 151 Cal.App.2d 589, 593.) Mother's failure to provide a complete and accurate record makes meaningful appellate review difficult. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

## II.    Merits

We nonetheless have considered the appeal based on the limited facts before us, and it does not appear that the trial court erred.

There is no basis for finding the trial court erred in denying mother's belated request for a continuance so that she could testify. "Trial courts generally have broad discretion in deciding whether to grant a request for a continuance." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.) Moreover, continuances may only be granted upon a showing of good cause. (Cal. Rules of Court, rule 3.1332.) Mother provided no explanation for her failure to attend the hearing, other than counsel's statement that mother suffered from a knee injury. Mother had been in California just days before the hearing, but chose not to stay to personally appear at the hearing. Moreover, mother was permitted to extensively cross-examine father, and to present a

declaration with hundreds of pages of exhibits in support of her position. (See *Cohen v. Herbert* (1960)186 Cal.App.2d 488, 494 [an error in failing to grant a request for a continuance is reversible only if it is tantamount to the denial of a fair hearing].)

Also, we can discern no basis for finding the trial court erred when it denied mother's request for a continuance to present expert testimony. Expert testimony is not required in child custody proceedings. Evidence Code section 730 provides: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party *may appoint one or more experts* to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." (Italics added.) Family Code section 3111, subdivision (a) provides: "In any contested proceeding involving child custody or visitation rights, the court *may appoint a child custody evaluator* to conduct a child custody evaluation in cases where the court determines it is in the best interests of the child." (Italics added.) A trial court's refusal to appoint a child custody evaluator is reviewed for an abuse of discretion. (*In re Marriage of E.U. and J.E.* (2012) 212 Cal.App.4th 1377, 1389; *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 835.)

Here, the court had already held a six-day custody trial and obtained a comprehensive custody evaluation, and the trial court could reasonably conclude that it did not require further expert testimony to evaluate G.R.N.'s best interests, based on the relatively brief period of time G.R.N. lived in Washington.

Mother contends that a custody evaluation is required for "move away" cases. Her cited authorities do not support this conclusion. (See *In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1127; *In re Marriage of McGinnis* (1992) 7 Cal.App.4th 473, 475.) The court ordered that father was to have full legal and physical custody, "and all the rights that go along with it." "A parent entitled to the custody of a child has a right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child." (Fam. Code, § 7501,

11

subd. (a).)  The court implicitly found father was entitled to return with G.R.N. to their home state of California.

Lastly, there is no basis for finding the trial court abused its discretion when it awarded father full physical and legal custody.  " 'Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child.  The court and the family have "the widest discretion to choose a parenting plan that is in the best interest of the child." [Citation.]  When determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents.' " (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 433.)  When there is a final custody order in place, as there was here, the "party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification." (*Ibid*.)  We review custody determinations for an abuse of discretion.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *In re Marriage of Abargil* (2003) 106 Cal.App.4th 1294, 1298 ["We review for abuse of discretion relocation orders that permit a custodial parent to move way with a child"].)

Mother significantly frustrated father's visitation with G.R.N., repeating in Washington the same claims of abuse which failed to persuade the court here.  This, alone, was a sufficient basis for finding changed circumstances, and that the requested order was in G.R.N.'s best interest.  (See, e.g., *Moffat v. Moffat* (1980) 27 Cal.3d 645, 652; *In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 682.)

## DISPOSITION

The judgment is affirmed.  Respondent is awarded his costs on appeal.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.                    RUBIN, J.


12